𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

| | | |
|---|---|---|
| David Lamont Brown, | ) | Civil Action No. 9:07-0603-JFA-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Major Phillip C. Anderson, | ) | |
| Captain Sharon Middleton, | ) | |
| Lieutenant Linda Butler, | ) | |
| Sheriff Chad Cox, | ) | |
| Sheriff Dan Wideman, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.   INTRODUCTION

The Plaintiff, David Lamont Brown ("Plaintiff" or "Brown"), was in the custody of the Greenwood County Detention Center ("GCDC") during the time of the events alleged in his complaint.[1]  Pursuant to 42 U.S.C. § 1983,[2] the Plaintiff filed this action against the above-captioned Defendants, Major Phillip C. Anderson ("Major Anderson"), Captain Sharon Middleton ("Cpt. Middleton"), Lieutenant Linda Butler ("Lt. Butler"), Sheriff Chad Cox

---

[1]   Due to Brown's pending criminal charges, a municipal court judge ordered Brown into custody; Brown was in the custody of GCDC from July 28, 2006 to January 23, 2007, the day he appeared in court and pled guilty to some of the pending criminal charges, while other charges were dismissed.  *See* Affidavit of Major Phillip C. Anderson ("Anderson Affidavit") [23-3] at ¶ 4; Affidavit of Lt. Linda Butler ("Butler Affidavit") [23-5] at ¶ 3; Defendants' Exhibit #2 [23-4] labeled "Inmate Records" at pp. 3-6.  However, the Plaintiff remained in the custody of the GCDC because of the Family Court order of contempt, which sentenced the Plaintiff to six months for failure to pay child support.  Anderson Affidavit [23-3] at ¶ 8.

[2]   42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

("Officer Cox"), and Sheriff Dan Wideman ("Sheriff Wideman").[3] Major Anderson oversees the daily operations of the GCDC.[4] Cpt. Middleton and Lt. Butler are employees in supervisory capacities at the GCDC.[5] Sheriff Wideman is the sheriff of Greenwood County and oversees the operation of the Sheriff's Department including the GCDC.[6] Officer Cox is an officer employed with the Greenwood County Sheriff's Department. Officer Cox's duties with the Sheriff's Department include working on assignment with the Greenwood County Family Court.[7]

The Plaintiff alleges he was denied equal protection and access to the courts when the Defendants failed to transport him to Family Court on December 7, 2006 for an appearance, and seeks compensatory and punitive damages. [1]

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.    *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been

---

[3] Collectively, Major Anderson, Cpt. Middleton, Lt. Butler, Officer Cox, and Sheriff Wideman will be referred to herein as the "Defendants."

[4] Anderson Affidavit [23-3] at ¶ 2.

[5] Middleton Affidavit [23-7] at ¶ 2; Butler Affidavit [23-5] at ¶ 2.

[6] Wideman Affidavit [23-8] at ¶ 2.

[7] Cox Affidavit [23-6] at ¶ 2.

made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

      *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## III. FACTUAL BACKGROUND

Brown filed a verified Complaint[8] alleging that the Defendants denied him equal protection and access to the court. Brown states he was incarcerated in the GCDC as of July 27, 2006. Brown alleges that on November 7, 2006, he was served with an "affidavit" to appear before the Greenwood County Family Court on December, 7, 2006.[9] Brown claims:

> [I] was denied to go to my court order to appear before the Family Court on December 7, 2006 by the Administration at Greenwood County Detention Center Major Phillip C. Anderson, Captain Sharon Middleton, Lieutenant Linda Butler, Sheriff of Greenwood Dan Wideman[,] Sheriff Officer Chad Cox.[10]

Brown contends that GCDC and GCDC Administration and Greenwood Sheriff's department "fail to come get me and take me to court as court ordered on December 7, 2006 at 9:30 a.m. as I was in the custody of Greenwood Sheriff Department and [GCDC]."[11] As a result of Brown's failure to appear, a bench warrant was issued on December 29, 2006 by the Honorable Billy A. Tunstall, Jr., a judge of the Eighth Judicial Circuit in Greenwood County.[12] Brown contends that "because of this bench warrant I was sentence[d] to 6 months day for day

---

[8] In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). The Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[9] A note written on the Rule to Show Cause submitted by the Plaintiff indicates he was served with it on November 7, 2006. *See* Rule to Show Cause, attached to Plaintiff's pleading filed on May 11, 2007. [20]

[10] Complaint [1] at p. 3; *see also* Plaintiff's Letter [20] at p. 3.

[11] Complaint [1] at pp. 3-4.

[12] Plaintiff initially had named Judge Tunstall and the Greenwood County Clerk of Court as additional defendants in his complaint. On March 21, 2007, the undersigned issued a Report and Recommendation which recommended that Judge Tunstall be dismissed on the grounds Judge Tunstall, as a South Carolina Family Court Judge, had absolute immunity from any claim for damages arising out of his judicial actions. [7] The Report and Recommendation also recommended that the defendant Greenwood Clerk of Court be dismissed from the action on the grounds that such personnel are immune from suit. On May 3, 2007, the District Court issued an Order adopting the Report and Recommendation and dismissed those defendants without prejudice and without issuance of service of process. [17]

no work credits, no good time, and kept away from my kids, family, love[d] ones, longger [sic] and harrish [sic] sentencing all cause of a bench warrant thats [sic] not my fault and beyond my control" because he was in custody.[13]

The Defendants have supplemented the facts set forth by the Plaintiff. On October 16, 2006, during the time that the Plaintiff was incarcerated at GCDC on unrelated pending charges, a Rule to Show Cause was issued against the Plaintiff requiring him to appear before the Family Court and show cause explaining his failure to abide by a previous child support order by the Family Court dated July 13, 2001 (the "July 2001 Child Support Order").[14] According to the Rule to Show Cause, the Plaintiff had not paid the child support as ordered by the July 2001 Child Support Order and was in arrears in the amount of $12,776.40.[15] A hearing on the Rule to Show Cause was set for December 7, 2006.[16]

According to the Plaintiff, he received the Rule to Show Cause on or about November 7, 2006[17] from "Sheriff department officer Amy Tyler,"[18] who "hand delivered the Affidavit to Plaintiff."[19] The court has reviewed the Rule to Show Cause, and observes that the "Personal Service" section of that Rule to Show Cause is blank, and does not indicate when or who served

---

[13]     *See* Complaint [1] at p. 4.

[14]     *See* Rule to Show Cause, attached to Plaintiff's letter filed on May 11, 2007.  [20]

[15]     *See* Rule to Show Cause, attached to Plaintiff's letter filed on May 11, 2007.  [20]

[16]     *See* Rule to Show Cause, attached to Plaintiff's letter filed on May 11, 2007.  [20]

[17]     *See* Rule to Show Cause, attached to Plaintiff's letter filed on May 11, 2007.  [20]

[18]     *See* Plaintiff's Opposition [27] at p. 1.

[19]     *See* Plaintiff's Opposition [33] at p. 2.

the Plaintiff.[20]  Major Anderson has stated he does not know how the Rule to Show Cause was served on the Plaintiff.[21]

The Defendants contend that after the Plaintiff received the Rule to Show Cause, the Plaintiff did not personally tell Sheriff Wideman, Major Anderson, Cpt. Middleton, Lt. Butler or Officer Cox that he had been ordered to appear in Family Court on December 7, 2006.[22]  The Defendants further contend that prior to December 7, 2006, Sheriff Wideman, Major Anderson, Cpt. Middleton, Lt. Butler, and Officer Cox had no knowledge of the Rule to Show Cause or the hearing scheduled for December 7, 2006.[23]  Finally the Defendants state that if any of them had received notice of the hearing from Brown or from any other avenue, appropriate arrangements would have been made to transport Brown to court.[24]

As a result of the Plaintiff's absence from court on December 7, 2006, the Family Court issued a bench warrant for his arrest.[25]  At that time, the Family Court did not know that Brown was incarcerated at GCDC.  Sheriff Wideman, Major Anderson, Cpt. Middleton, and Lt. Butler did not know that a bench warrant had been issued against Brown on December 7, 2006 for his failure to appear as ordered.[26] Officer Cox, an officer assigned to the Family Court, knew that a

---

[20] *See* Rule to Show Cause, attached to Plaintiff's letter filed on May 11, 2007.  [20]

[21] Anderson Affidavit [23-3] at ¶ 5.

[22] Wideman Affidavit [23-8] at ¶ 3; Middleton Affidavit [23-7] at ¶ 3; Butler Affidavit [23-5] at ¶ 2; Anderson Affidavit [23-3] at ¶ 5; Cox Affidavit [23-6] at ¶ 2.

[23] Wideman Affidavit [23-8] at ¶ 3; Middleton Affidavit [23-7] at ¶ 3; Butler Affidavit [23-5] at ¶ 4; Anderson Affidavit [23-3] at ¶ 5; Cox Affidavit [23-6] at ¶ 2.

[24] Anderson Affidavit [23-3] at ¶ 3; Wideman Affidavit [23-8] at ¶ 3; Middleton Affidavit [23-7] at ¶ 3; Butler Affidavit [23-5] at ¶ 4.

[25] See Defendants' Exhibit #2 labeled "Inmate Records" [23-4] at p. 1.

[26] Wideman Affidavit [23-8] at ¶ 2; Anderson Affidavit [23-3] at ¶ 6; Middleton Affidavit [23-7] at ¶ 2; Butler Affidavit [23-5] at ¶ 5.

bench warrant had been issued for Brown, but did not know that Brown was currently incarcerated at GCDC on unrelated charges.[27]

Sometime after December 7, 2006, Officer Cox discovered that Brown was in fact incarcerated at the GCDC when he recognized Brown in a hallway at GCDC. After Officer Cox discovered that Brown was incarcerated at GCDC on unrelated charges, Officer Cox told Brown that a bench warrant had been issued on December 7, 2006. Officer Cox also made arrangements for Brown to appear before the Family Court on the bench warrant and original Rule to Show Cause,[28] and on January 2, 2007, Brown was transported from the GCDC to the Family Court for a hearing on the bench warrant and original Rule to Show Cause.[29] As a result of that hearing, Family Court Judge Tunstall found that Brown was in contempt of court for failure to pay child support as previously ordered in 2001.[30] The Family Court held that Brown was to be committed to the GCDC for a period of six months commencing on January 2, 2007.[31] The Family Court also held that Brown was not to be given any work credit or good time credits.[32] The Family Court did, however, order that Brown was to be released on the contempt of court finding if Brown paid the child support arrearage owed in the amount of $13,226.85 plus $100.00 for court costs. The contempt order was not based on Brown's absence from the December 7, 2006 hearing, but was based on the finding that Brown had failed to pay child support as previously ordered.[33]

---

[27]   Cox Affidavit [23-6] at ¶¶ 2-3.

[28]   Cox Affidavit [23-6] at ¶¶ 3-4.

[29]   Cox Affidavit [23-6] at ¶ 4.

[30]   Cox Affidavit [23-6] at ¶ 4.

[31]   Defendants' Exhibit #2 [23-4] labeled "Inmate Records" at p. 2.

[32]   Defendants' Exhibit #2 [23-4] labeled "Inmate Records" at p. 2.

[33]   *Id.*

After the hearing, Brown was transported back to the GCDC where he was held on the pending unrelated charges.[34] On January 23, 2007, Brown pled guilty to some of those unrelated charges, and others were dismissed.[35] However, Brown remained detained at the GCDC pursuant to the civil contempt of court order issued on January 2, 2007, for failure to pay child support.[36]

## IV.  PROCEDURAL HISTORY

On February 26, 2007, the Plaintiff commenced this action against the Defendants.[37] [1] In his Complaint, the Plaintiff specifically stated that there was a prisoner grievance procedure at the GCDC, and named "Lt. Butler." The Plaintiff stated he filed a grievance on December 7, 2006 but had not received a final answer as of the date of his complaint.[38]

After the case was brought in to proper form, the undersigned issued an Order directing service of process by the clerk, collection of the filing fee, apprising the Defendants of the deadline for filing dispositive motions, and directing the Plaintiff to notify the clerk in writing of any change of address. [8] On April 17, 2007 the Defendants timely filed an answer to the complaint, asserting various affirmative defenses, including the defense that the Plaintiff had failed to exhaust his administrative remedies. [14] Thereafter, on June 1, 2007, the Defendants filed a motion for summary judgment with supporting documents. [23] On June 5, 2007, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' motion, the summary dismissal procedure and the

---

[34]  Cox Affidavit [23-6] at ¶ 4.

[35]  Defendants' Exhibit #2 [23-4] labeled "Inmate Records" at pp. 3-6.

[36]  Anderson Affidavit [23-3] at ¶ 8; Butler Affidavit [23-5] at ¶ 8.

[37]  Should a limitations issue arise in this action, Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his complaint. *See* this court's Order [5] filed on March 8, 2007.

[38]  *See* Complaint [1] at p. 2.

possible consequences if Plaintiff failed to adequately respond to the Defendants' motion within thirty-four (34) days. [25]  The Plaintiff filed his response in opposition to the motion for summary judgment on July 11, 2007.  [33]

On August 8, 2007, the undersigned issued interrogatories to the Defendants in order to ascertain whether the Plaintiff had exhausted his administrative remedies with respect to the matters alleged in the complaint, as that issue had not been addressed in the memorandum in support of the Defendants' motion for summary judgment.  [35]  On August 17, 2007, the Defendants filed their responses, which will be addressed below.  [35]

As the issues have been joined, this case is ripe for review by the undersigned.

## V.  THE MOTION FOR SUMMARY JUDGMENT

The Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## VI.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

As a threshold matter, the court must address whether the Plaintiff has exhausted his administrative remedies prior to filing this action. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citations and quotations omitted). The Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. at 522; *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove. *Jones v. Bock*, ---U.S. ----, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

Upon reviewing the Defendants' responses to the Court's interrogatories [37], the undersigned finds that the Plaintiff exhausted his administrative remedies with respect to the issues raised in his complaint. Therefore, the court will turn to the merits of the Plaintiff's case.

### B.  The Merits of Plaintiff's Case

To state a cause of action under Section 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). It is well settled that inmates have a right of access to the courts to give them a reasonably adequate opportunity to present

their claims. *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Such access must be "adequate, effective and meaningful." *Id*. at 822, 97 S.Ct. 1491. To state a claim of violation of this right of access, a prisoner must show some interference with his right or some deficiency in the legal resources available to him, as well as evidence of actual injury or specific harm related to litigation. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). As explained in *Lewis v. Casey*, "the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In *Wolff v. McDonnell*, we extended this universe of relevant claims only slightly, to 'civil rights actions'- i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Lewis v. Casey*, 518 U.S. at 354, citing *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). As the Supreme Court observed in *Lewis v. Casey*, "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355; *see also Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1160 (9th Cir. 2003) ("[A] prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim.").[39] The civil nature of the action is important; for example, "a prisoner does not have a constitutional right to attend the jury trial of his civil rights claim involving the conditions of his

---

[39] The United States Supreme Court's decisions over the past 130 years have grounded the right of access to the courts in several different constitutional provisions, including Article IV's Privileges and Immunities Clause, the First Amendment's Petition Clause, the Fifth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses. *See Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (collecting cases).

confinement." *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) (citations omitted). More recently, in *Wright v. Beck*, 2006 WL 4705999 (E.D.N.C. April 5, 2006), Wright, a state inmate, filed a Section 1983 action alleging he had been denied access to the courts because he was not given a letter and subpoena from a court in Lancaster County, South Carolina. Judge Dever held that Wright's civil action, which he filed after he was convicted and in custody of the North Carolina Department of Correction, "is not the kind of litigation that warrants the guarantee of access to the courts."[40] 2006 WL 2705999 at *1. In so holding, Judge Dever relief upon *Lewis v. Casey,* and *Simmons*.

Thus, the court concludes that the Plaintiff had no right to be transported to the Family Court on December 7, 2006, regardless of whether the Defendants were aware of the court date. The Plaintiff does not have a constitutional right to litigate a civil claim that is unrelated to his confinement, which does not directly or collaterally attack his sentence.

### Sheriff Wideman

To the extent that the plaintiff has sued Sheriff Wideman in his official capacity, it is recommended that he be dismissed from this action. Section 1983 lawsuits in federal court against South Carolina sheriffs in their official capacities are barred by Eleventh Amendment immunity because the lawsuit is, in reality, against the State of South Carolina. *See Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523, 524-25 (S.C. 1992); *McConnell v. Adams*, 829 F.2d 1319, 1328-29 (4th Cir. 1987). As noted above, the Plaintiff seeks monetary damages in this case. As no statutory waiver of immunity exists, the claims against Defendant Sheriff Wideman in his official capacity should be dismissed. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

---

[40] The Honorable James C. Dever, III, United States District Judge for the District of North Carolina.

**Respondeat superior**

To the extent that the Plaintiff seeks to assert liability against Major Anderson, who oversees the daily operations of the GCDC,[41] or against Lt. Butler or Cpt. Middleton, it is a well-established principle that respondeat superior is not a basis for liability under 42 U.S.C. § 1983.  Phrased differently, Section 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort.  *See Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985), the Court held that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of *respondeat superior* has no application under this section."  *Id.* (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (*quoting Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D.Md. 1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971)); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Lopez v. Robinson,* 914 F.2d. 486, 494 (4th Cir. 1990); *Shelton v*. *Angelone,* 183 F. Supp. 2d 830, 836 (W.D. Va. 2002); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied,* 513 U.S. 813 (1994) (holding a plaintiff must show deliberate indifference of supervisor).  Thus, Major Anderson cannot be held liable under a theory of *respondeat superior*.

**Supervisory Liability**

Next, to the extent the Plaintiff may rely on the doctrine of supervisory liability with respect to any of the Defendants, the Plaintiff's case fails.  "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  *Miltier*, 896 F.2d at 854 (citation omitted).  To establish supervisory liability under § 1983, a plaintiff must demonstrate:

---

[41]     Anderson Affidavit [23-3] at ¶ 2.

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001); *see also Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828 (1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). The misconduct of the subordinate must be "affirmatively link[ed]" to the action or inaction of the supervisor. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). A plaintiff "cannot satisfy this burden of proof by pointing to a <u>single incident or isolated incidents</u>[.]" *Slakan*, 737 F.2d at 373 (emphasis added). Instead, supervisory liability may only be imposed where "there is a history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 935, 936 (4th Cir. 1983). Therefore, a plaintiff who is able to prove deliberate indifference, tacit authorization, or widespread and pervasive abuses may be able to establish supervisory liability under 42 U.S.C. § 1983. However, no such showing has been made in the instant action, and the Defendants should be dismissed.

**To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Official Capacities, the Defendants are not amenable to suit under Section 1983**

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. § 1983 and therefore are not subject to suit under Section 1983. *Will*, 491 U.S. at 71.

The Plaintiff's Complaint identifies the Defendants by their rank at the GCDC. The events occurred while the Defendants were acting in their capacities as employees of the GCDC. Thus, to the extent Plaintiff lodges claims against the Defendants in their official capacities, these are actually claims against the GCDC and should be dismissed.

### **To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Personal Capacities, the Defendants are Entitled to the Defense of Qualified Immunity**

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials. In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this clearly established right applies to the actions of the official must also be apparent. As such, if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotations, citations, and modification omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

The Supreme Court of the United States has adopted a two-prong test for evaluating claims of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002). "[I]f so, [the court must] then proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Moreover, with regard to the latter inquiry, it must be determined whether a reasonable state official could have understood that the conduct at issue violated the clearly established right. *See, e.g., Henderson v. Simms*, 223 F.3d 267, 273 (4th Cir. 2000). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

Plaintiff claims he was denied access to the courts because he was not taken to his Family Court hearing on December 7, 2006. As mentioned above, detainees do have the right to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement[,] [but] [i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Brown had no constitutional right to have the Defendants arrange to take him to his December 7, 2006 appearance in Family Court, and thus he has failed to state a claim of denial of access to the courts.

### State Law Claims

To the extent that the Plaintiff's complaint can be construed to set forth any claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted to the Defendants, as set for above. *See* 28 U.S.C. § 1367(c).

### This Action Should be Deemed a Strike

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA. Therefore, it is recommended that it be counted as a "strike" against the Plaintiff. *See* 28 U.S.C. § 1915A.[42]

### RECOMMENDATION

Based upon the foregoing, it is recommended that the Defendants' Motion for Summary Judgment **[23] should be granted, and that a strike be imposed on the** Plaintiff pursuant to 28 U.S.C. § 1915A.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

September 12, 2007

Charleston, South Carolina

---

[42] The undersigned notes that one strike already has been imposed on the Plaintiff in *Brown v. Kirk, et al*, CA 9:06-cv-2532 (JFA-GCK).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).